# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

JACQUELYN BURTON, individually and on behalf of similarly situated persons,

Plaintiff,

v.

AMNJ ENTERPRISES, INC. d/b/a DOMINO'S PIZZA and JOEL BURTON,

Defendants.

Case No. 2:19-cv-164

Jury Demanded

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Named Plaintiff Jacquelyn Burton, individually and on behalf of all others similarly situated ("Plaintiff" or "Plaintiffs"), through her attorneys, moves the Court for final approval of the Parties' class action settlement. A copy of the Parties' agreed-upon Settlement and Release Agreement ("Settlement Agreement") and the Class Notice and Claim Form have previously been filed. The declaration of Plaintiffs' attorney Jay Forester in further support of this Settlement Agreement, Motion and brief are attached along with a declaration and status report from the Third-Party Administrator as Exhibits to this Motion. The settlement meets the standards for approval of a class action settlement and this Motion should be approved.

## MEMORANDUM IN SUPPORT

### Facts and Procedural History

Plaintiff filed this lawsuit ("the Litigation") on behalf of herself and similarly situated Delivery Drivers who were hired to deliver pizzas for Defendants. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), the Wisconsin Minimum Wage Law, WI Stat. § 104.02 et seq. ("Wisconsin Wage Law"), WI Stat. § 109.03 et seq., and common law (collectively, these

1

non-FLSA claims are referred to herein as "Wisconsin wage and hour law") by failing to pay her and other similarly situated Delivery Drivers the lawful and applicable minimum wage because their expense reimbursements were alleged to be insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants categorically deny Plaintiff's allegations and submit Plaintiff and all other delivery drivers were paid lawfully and in compliance with the FLSA and related state laws. The Parties participated in an alternative dispute resolution ("ADR") process that included a full-day in-person mediation before an experienced wage and hour class and collective action mediator, Kay Wolf, Esquire, that took place on November 19, 2019. Prior to the mediation, the Parties engaged in extensive pre-mediation discovery that included the production of mileage and mileage reimbursement data for each store where Settlement Class Members were employed by Defendants. In preparation for the mediation, the Parties drafted detailed mediation statements and damages analyses. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations under the FLSA and applicable state laws. Although this mediation did not result in an immediate settlement, the Parties continued to work towards resolution of this matter in the months following mediation.

From Plaintiff's perspective, the Agreement provides an excellent outcome for the Settlement Class Members. Defendants contend that they properly reimbursed the Delivery Drivers' automobile expenses and complied at all times with the FLSA and applicable state wage and hour laws. Defendants further contend that even if liability were established by Plaintiff, which they deny, they acted in good faith and that a two-year, as opposed to an extended, statute of limitations should apply to Plaintiff's claims. Defendants also dispute that Plaintiff's claim is appropriate for class or collective action treatment, except for settlement purposes. If the Court were to accept these arguments, it would negate a substantial percentage, or all, the alleged damages in the case.

On April 1, 2021, the Court approved the FLSA portion of the Settlement Agreement and granted preliminary approval of the class action portion of the Settlement Agreement. (Dkt. No. 32). Pursuant to that Order, the Parties, through the third-party administrator, sent the approved Notice of Class Action Settlement and Claim Form to all Settlement Class Members, thereby notifying all Settlement Class Members of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's Order. Following notice,

1. There were no objections to the Agreement,
2. No settlement class member expressed a desire to be excluded from the settlement agreement,
3. No Settlement Class Member has requested to participate in the Fairness Hearing. *See generally*, **Exhibit 1**, Declaration of Nancy Johnson, President of CAC Services Group, LLC ("Johnson Decl."); *see also* **Exhibit 2**, Status Report from Third-Party Administrator, and
4. Chief Judge Pepper granted final approval of the class action settlement in *Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI), a separate hybrid wage and hour dispute handled by Plaintiff's Counsel, Forester Haynie PLLC, brought on behalf of delivery drivers that tracks that same settlement structure negotiated here.

As this Motion and the relief requested is unopposed by Class Members and Defendants, the Court should grant Plaintiff's Motion.

## Key Settlement Terms

The Parties have executed the Settlement Agreement, which has been filed with this Motion.

The settlement class is defined as:

All persons who have worked as a delivery driver for Defendants between January 31, 2017 and April 1, 2021.[1]

The Parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys' fees, litigation costs, administration costs and a modest service award to the Named Plaintiff. Each class member will receive a minimum payment. The remaining settlement funds will be distributed to the class members who have submitted claims, pursuant to the FLSA's opt-in provisions and portion of the settlement that the Court has already approved.

The release binding Class Members who do not opt out is limited to wage and hour claims pursuant to the state wage laws and Rule 23. Authorized claimants, who have affirmatively opted-in to the FLSA settlement that was previously approved, have also agreed to release federal wage and hour claims pursuant to the federal Fair Labor Standards Act ("FLSA") and in exchange for additional and individualized consideration.

The Parties have fully complied with the terms of the Court's Order approving the FLSA settlement, remain committed to fully and fairly administering the settlement distribution to the Class, and have even agreed to establish and administer a six-month Contingent Fund Period in the continued interest of the Class Members and judicial economy. There have been no objections to the Agreement. Similarly, no Delivery Driver or Class Member has requested to participate in the Fairness Hearing nor be excluded from the Settlement. *See generally*, **Exhibit 1** (Declaration of third-party administrator, CAC Services Group, LLC).

Subject to this Court's final approval, the total payments to be made by Defendants under the Agreement include the following:

    1.    As further detailed in ¶ C below, Plaintiff Burton will receive a service award in

---

[1] The date the Court granted Parties Joint Renewed Moton for Preliminary Approval of Settlement Agreement. (Dkt. No. 32).

recognition of the work involved and the benefits achieved by the Plaintiffs.

2. The Settlement Claims Administrator, CAC Services Group, LLC, and Class Counsel will receive their actual costs incurred.[2]

3. All Settlement Class Members will receive a minimum payment from the Wisconsin Rule 23 Class Settlement Fund. Because these individuals did not affirmatively opt-in to the settlement, they will retain all rights under federal law and pursuant to the FLSA's opt-in provisions.

4. All Authorized Claimants who did elect to affirmatively opt-in to this Settlement, will receive their share of the FLSA Settlement Fund. Following the settlement notice period, approximately 18%[3] of Settlement Class Members have elected to opt-in to this fund and will receive additional consideration in exchange for the additional release of their federal FLSA claims based on their actual mileage.

5. Any unclaimed funds remaining following the initial distribution of the Settlement Funds will be held in the Contingent Fund. Under the terms of the Settlement Agreement, all Settlement Class Members who have neither excluded themselves from the settlement nor Opted-In to the Settlement will still remain eligible to submit a claim for up to the full amount of their share of the FLSA Settlement Fund from this Contingent Settlement Fund for an additional six months.

6. As further detailed in ¶ B below, Class Counsel will receive fees in the amount of one-third of the negotiated settlement fund.

---

[2] As the administrator's estimated costs of $12,879.02 are $2,379.02 more than anticipated, the Parties have conferred and agreed to use Plaintiff Counsel's unused costs to cover these excess costs and so that no Class Members will be impacted by the slight overage in administration costs.

[3] This level of participation is in line with prior class actions handled for delivery drivers by Class Counsel. *See e.g.*, *Smith v. Southeastern Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D. N.C.)(20% opt-in rate); *Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN.)(21%); *Ball v. New River Valley Pizza, LLC, et al*, Case 7:19-cv-362 (W.D. VA.)(16%).

## The Court Should Grant the Parties' Motion

### A. The Class Action Settlement Satisfies The Relevant Standards

"As a rule, courts favor settlement of disputed claims, including class actions." *Anderson v. Torrington Co.,* 755 F.Supp. 834, 837 (N.D. Ind. 1991) (collecting cases). This is "particularly important" in complex, multi-party litigation which is likely to require substantial court time over a period of years. *In re VMS Ltd. P'ship. Sec. Litig.,* 1995 U.S. Dist. LEXIS 8079, *12 (N.D. Ill. Jun. 12, 1995) (citing *In re Four Seasons Sec. Laws Litig.,* 60 F.R.D. 598, 602 W.D. Okla. 1973)); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling wage claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they believe they are entitled in a prompt and efficient manner. The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement to all affected class members; and

3. A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class

members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, § 11.22, *et seq.*

The Court previously granted approval of the collective action portion of the settlement and preliminary approval of the class action portion of the settlement. Since that Order, notice was disseminated, the Parties have fully complied with the Court's Order, and Chief Judge Pepper of this District finally approved another hybrid wage and hour matter brought by Class Counsel on behalf of delivery drivers with a nearly identical settlement structure, *Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI).

This case is now at the final approval stage and the Parties jointly seek approval of their class action settlement. At the final approval stage, courts consider six factors: "'(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Shah v. Zimmer Biomet Hldgs.,* 2020 U.S. Dist. LEXIS 89141, *5-6 (N.D. Ind. May 21, 2020) (quoting *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863 (7th Cir. 2014); citing FED. R. CIV. P. 23(e)(2) (enumerating factors for courts to consider in determining whether a settlement is fair, reasonable and adequate)). Here, all six factors strongly indicate that final approval of the class action settlement is warranted.

**Factor 1:** **The strength of the case for Plaintiffs on the merits, balanced against the extent of settlement offer**

Plaintiffs' claims are supported by substantial evidence, but ultimately that claim may depend upon persuading a jury to adopt their evidence over Defendants' competing evidence and arguments. Predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims. Consequently, it is

possible the class members would recover less than the damages they allege, or no damages at all. Plaintiffs and their counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation. In sum, the uncertainty of a jury trial warrants settlement approval. Plaintiffs further recognize some risk of denial of class certification. Plaintiffs' counsel weighed that risk in negotiating the settlement amount.

The recovery here falls well within the range of comparable settlements approved around the nation in wage and hour claims in that the negotiated maximum settlement amount equates to approximately 38% of recoverable damages, which is within the range of fairness as determined previously by courts.[4] A balancing of the strength of Plaintiffs' case on the merits against the extent of the settlement offer weighs heavily in favor of settlement approval.

**Factor 2: The complexity, length and expense of further litigation**

District Courts in this Circuit have acknowledged that class actions can be "time-consuming and expensive." *Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2009 WL 3380354, at *11 (E.D. Wis. Oct. 20, 2009). This case is no exception. By reaching a favorable settlement now, the Parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. Making substantial monetary relief available now and during the Contingent Fund period, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

**Factors 3 & 4: The amount of opposition to the settlement and the reaction of members of the class to the settlement**

---

[4] *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (26% or greater recovery sufficiently reasonable in wage and hour dispute); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (30% or greater recovery in wage and hour dispute constituted a "tangible monetary benefit" for the class members); *Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI)(40% recovered).

After dissemination of the Court-approved notice, no class member has objected to any term of the settlement, which indicates that the class is generally pleased with the result. *See, e.g., Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement). Furthermore, zero class members elected to opt out of the settlement.

**Factor 5:     The opinion of competent counsel**

Courts place significant weight on the endorsement of experienced class counsel. *In re Mexico Money*, 164 F. Supp. 2d at 1020, 1019 (N.D. Ill. 2000). Counsel for both sides fully support the Settlement Agreement, and this factor favors final approval of the Settlement. *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 197 (N.D. Ill. 2018). When evaluated in light of the relevant factors, the proposed settlement is fair, reasonable, and adequate and should be approved.

**Factor 6:     The stage of the proceedings and amount of discovery completed**

Although this claim settled relatively early into the proceedings, Class Counsel has litigated several similar claims by delivery drivers around the nation. Because of this experience, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate potential damages. That data was disclosed, then utilized to evaluate both potential liability and various damage scenarios. The Parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

**B. Attorney's Fees and Costs Provided in the Settlement are Appropriate**

The Settlement Agreement provides that Plaintiffs' counsel will recover their fees from the Settlement Fund. The FLSA and Wisconsin Minimum Wage Law contain fee- and cost-shifting

9

provisions. 29 U.S.C. § 216(b); WI Stat. § 104.02 *et seq.*

The Seventh Circuit recognizes that the purpose of fee shifting is to "assure competent representation for plaintiffs" and to enable plaintiffs to vindicate their rights. *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 643 (7th Cir. 2011) (quoting *In re Cont'l. Ill. Sec. Litig.,* 962 F.2d 566, 573 (7th Cir. 1992)) (purpose of fee-shifting is to assure competent representation"); *Kovacs v. U.S.,* 739 F.3d 1020, 1027 (7th Cir. 2014) (recognizing that fee-shifting serves "an important public-interest function … by making it possible for persons without means to bring suit to vindicate their rights."). Simply stated, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir. 1999). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The Settlement Agreement here authorizes an award of fees in accordance with paragraph 29 in the parties' Settlement and Release Agreement or one-third of the negotiated settlement funds. "[C]ounsel fee of 33.3% of the common fund 'is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers' in an FLSA action." *Burkhalter v. City of Ft. Wayne,* 750 F.Supp.2d 990, 997 (N.D. Ind. Nov. 1, 2010) (collecting cases); *Day v. NuCO2 Mgt., LLC,*

2018 U.S. Dist. LEXIS 218431, *4 (N.D. Ill. May 18, 2018) (awarding one-third fee in FLSA claim) (collecting cases); *City of Greenville v. Syngenta Crop Prot., Inc.,* 904 F.Supp.2d 902, 909 (S.D. Ill. 2012) (approving one-third fee award).

To ensure a fee award is reasonable, this Circuit considers "the *Hensley* factors:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasting, Inc.,* 578 F.3d 542, 544 & n. 1 (7th Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 430 n.3 (1983).

### *Hensley* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.

Plaintiffs' counsel possess extensive experience in all types of wage and hour litigation. Forester Decl., ¶ 6. In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiffs' attorneys, and "undesirability" of the case, *Hensley* factors (2), (3), (9) and (10) all strongly support Plaintiffs' counsels' requested fee.

### *Hensley* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award. *Hensley*, 461 U.S. at 436; *Robinson v. Perales,* 894 F.3d 818, 835 (7th Cir. 2018) (following *Hensley* and *Farrar v. Hobby,* 506 U.S. 103, 108 (1992)).

As noted above, given the novelty and difficulty of wage and hour class actions, the Delivery Drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the Parties following an informed mediation and

subsequent negotiations is a very successful result for Plaintiffs and all other Delivery Drivers. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the class. Some class members will receive substantial payments for their alleged underpayment of reimbursement expenses. And while some class members will receive less than others – based on relatively fewer miles driven within the applicable recovery period, or their non-participation in the settlement notice period – all class members will receive at least a minimum payment as defined in the Settlement Agreement.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiffs' Counsel's customary contingent fee in wage and hour litigation of 40% of any recovery. Here, the named Plaintiff signed a contingency fee agreement with Plaintiffs' Counsel agreeing to fees equaling 40% of the common fund. However, Plaintiffs' Counsel cut their percentage substantially in an effort to resolve this case and increase the amount paid to Plaintiffs and the Delivery Drivers.

*Hensley* **Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.**

To date, Plaintiffs' counsel has already spent over 100 hours litigating this case with no assurance of any recovery at all. Forester Decl., ¶ 11. This includes time spent investigating the facts, preparing and filing pleadings; reviewing documents produced by the named Plaintiffs and by Defendants; analyzing Defendants' reimbursement and mileage data; communicating with the named Plaintiffs; creating computerized damages models; researching and drafting a mediation statement; participating in the mediation; negotiating the terms of the settlement; drafting approval papers; and seeking Court approval of the settlement. *Id*.

Plaintiffs' lead-counsel's lodestar is based on his most recently approved hourly billing rate of $600.00. Forester Decl., ¶ 11. A "lodestar cross-check" can be performed based on counsel's time

spent to date as presented in the declarations. Here, even when no accounting is done for time to be incurred, that multiplier already falls well within the range of multipliers approved in this Circuit. *See, e.g., Ramsey v. Philips N. Am. LLC,* 2018 U.S. Dist. LEXIS 226672, *12 (S.D. Ill. Oct. 15, 2018) ("in risky litigation such as this, lodestar multiplier can be reasonable in a range between 2 and 5") (quoting *Spano v. Boeing Co.,* 2016 U.S. Dist. LEXIS 161078, *11 (S.D. Ill. Mar. 31, 2016)); *see also*, *Mishkin v. Zynex, Inc.,* 2012 WL 4069295 at *2 (D.Colo. Sep. 14, 2012) (collecting cases approving multipliers ranging from 2.5 to 4.6). That multiplier will continue to decline as counsel spends additional time pursuing settlement approval, assisting in settlement distribution, and responding to numerous inquiries from class members throughout the six-month-long Contingent Fund Period.

*Hensley* **Factor (12): Awards in Similar Cases.**

As set forth above and in the attached declaration, Plaintiffs' counsel's fees have been approved in related and prior wage and hour litigation. Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement. The diligent work by Plaintiffs' counsel in obtaining relief for the Delivery Drivers should be appropriately

compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

**C.      Named Plaintiffs Deserve a Service Award**

Services awards "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir. 2001).[5] The same request made here and detailed in the Settlement Agreement has repeatedly been approved by federal courts in matters handled by Class Counsel. *See e.g.*, *Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI).[6] The service award should also be approved because Named Plaintiff substantially assisted counsel in achieving this settlement on behalf of the class, and this time and effort are deserving of a service award. Defendants do not oppose the service award and there were no objections raised to this term or to the settlement generally during the notice period.

**Conclusion**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and issue an Order that grants final approval to the Parties' settlement, and dismisses the claims with prejudice, with each Party to bear its own fees and costs except as previously agreed between them.

                                                                 RESPECTFULLY SUBMITTED,

                                                                 */s/ J. Forester*
                                                                 **J. Forester**
                                                                 **D. Matthew Haynie**
                                                                 **FORESTER HAYNIE PLLC**
                                                                 400 N. St. Paul Street, Suite 700
                                                                 Dallas, TX 75020
                                                                 Phone: 214-210-2100

---

S*ee also, In re Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, *35-36 (S.D. Ind. Mar. 30) (surveying incentive awards granted within the Seventh Circuit ranging from $5,000.00 to $100,000.00 and awarding the named plaintiff a $10,000.00 incentive award).

[6] *See also*, *Bessey v. Mand Made Pizza, Inc. et al.,* Case 1:18-cv-00938-LTB (D. CO.); *Marnoch and Breit v. GBR Pizza, Inc. et al*, Case 5:19-cv-257 (E.D. N.C.); and, *McFadden v. NFSM Pizza, Inc.*, et al., Case 18-cv-204 (D. WY.).

**Joe P Leniski, Jr**
**J. Gerard Stranch**
**BRANSTETTER, STRANCH, & JENNINGS, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: 615-254-8801
Fax: 615-255-5419

**ATTORNEYS FOR PLAINTIFF AND
THE PROPOSED CLASS**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defense counsel and, pursuant to the terms of the Parties' Settlement Agreement, was advised that Defendants do not oppose the relief requested herein.

*/s/ Jay Forester*
J. Forester

## CERTIFICATE OF SERVICE

A copy of the foregoing document was electronically served on all counsel of record.

*/s/ Jay Forester*
J. Forester